UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | Cr. No. 16-100 WES |
| ESTEFANO J. LOBO, | ) ) ) | |
| Defendant. | ) ) | |

**CORRECTED MEMORANDUM AND ORDER**

WILLIAM E. SMITH, Chief Judge.

Defendant Estefano J. Lobo was indicted on drug trafficking and gun-related charges after Pawtucket police officers executed a search warrant at an apartment located at 60 Comstock Street in Pawtucket, Rhode Island. Lobo now moves to suppress all evidence seized during the search, and the Government opposes that motion.[1] After careful consideration, the Motion is DENIED for the reasons that follow.

I. Background

Lobo challenges the magistrate judge's probable cause determination on the face of the affidavit submitted in support of the application for the search warrant executed on October 25, 2016. Accordingly, the Court is tasked with assessing "the sufficiency of [the] affidavit supporting [the] search warrant"

---

[1] See Mot. To Suppress, ECF No. 15; Gov't Opp'n to Mot. To Suppress, ECF No. 17.

and in so doing, must "afford an ample amount of deference to the issuing magistrate's finding of probable cause." United States v. Dixon, 787 F.3d 55, 58 (1st Cir.), cert. denied, 136 S. Ct. 280 (2015) (citing United States v. Ribeiro, 397 F.3d 43, 48 (1st Cir. 2005); Illinois v. Gates, 462 U.S. 213, 236 (1983)). The Court will discard "the magistrate judge's initial evaluation . . . only if [it] see[s] no substantial basis for concluding that probable cause existed." Dixon, 787 F.3d at 58-59 (quoting Ribeiro, 397 F.3d at 48). With this in mind, the following facts are gleaned from the affidavit in support of the search warrant for the second floor of 60 Comstock Street. See United States v. Joubert, 778 F.3d 247, 252 (1st Cir. 2015) ("And in making this inquiry, we focus on the facts and supported opinions in the affidavit, ignoring 'unsupported conclusions.'") (citation omitted).

For approximately six months before obtaining a search warrant, Pawtucket police officers periodically surveilled Lobo at 60 Comstock Street.[2] During this surveillance period, officers witnessed numerous activities that were later used in support of an application for a search warrant of the apartment.[3]

---

[2] Gov't Opp'n to Mot. To Suppress Ex. 1, Aff. 1, Oct. 24, 2016, ECF No. 17-1 ("Warrant Aff.").

[3] See id. at 1-2; Gov't Opp'n to Mot. To Suppress Ex. 1, Search Warrant 1, Oct. 24, 2016, ECF No. 17-1 ("Search Warrant").

The first such activity occurred in April 2016, when officers observed Lobo briefly meet with an unnamed woman in his rental car in front of 60 Comstock Street, in Pawtucket, Rhode Island.[4] Officers believed this behavior was consistent with "illegal narcotics transactions."[5] Over the following six months, officers continued to intermittently surveil Lobo and witnessed brief meetings similar to the April meeting.[6] In July 2016, officers observed Lobo enter the three-story home at 60 Comstock Street and walk out on to the second-floor balcony.[7] Based on this observation, the officers connected Lobo to the second-floor residence of the home. In early October 2016, a confidential informant ("CI") approached Detective Smith, of the Pawtucket Police Department, and offered to purchase cocaine from Lobo.[8] Officers arranged for a "controlled buy" to take place by giving money to the CI, searching the CI prior to the buy, and surveilling both the CI and Lobo prior to, during, and after the encounter.[9] Immediately following the meeting with Lobo, the CI met officers

---

[4] Warrant Aff. 1.

[5] Id.

[6] Id.

[7] Id.

[8] Id.

[9] Id. at 1-2.

at a predetermined location and produced "a small plastic bag containing a yellowish white rock like substance."[10] Officers conducted a field test on the substance, which "showed a positive reaction for the presence of cocaine."[11] Officers observed Lobo return to 60 Comstock Street following his meeting with the CI.[12]

On October 24, 2016, Detective Smith applied for a search warrant for the second floor of 60 Comstock Street and a search warrant for Lobo's person.[13] Both applications included identical affidavits, which detailed the surveillance of Lobo's activities at 60 Comstock Street, and the controlled buy.[14] A Rhode Island state magistrate issued the requested warrants.[15]

The next day, Pawtucket police officers executed the search warrants.[16] Police officers detained Lobo outside of 60 Comstock

---

[10] Id. at 2.

[11] Id.

[12] Id.

[13] Search Warrant 1-7; Gov't Opp'n to Mot. To Suppress Ex. 2, Search Warrant 1-6, Oct. 24, 2016, ECF No. 17-2 ("Search Warrant for Lobo's Person"). Lobo does not contest the search warrant issued for his person.

[14] Warrant Affidavit 1-2; Search Warrant for Lobo's Person 4-6.

[15] Search Warrant 3; Search Warrant for Lobo's Person 3.

[16] Gov't Opp'n to Mot. To Suppress 2.

4

Street and brought him to the police station.[17] Officers used keys found on Lobo's person to access the second-floor apartment and a locked bedroom door inside the apartment.[18] Police found various drugs, drug packing materials, over $13,000 in cash, scales, a gun, and two empty safes inside the bedroom.[19] Police seized the items and arrested Lobo.[20]

On November 17, 2017, a grand jury indicted Lobo on five counts: (I) possession with intent to distribute 28 grams or more of cocaine base; (II) possession with intent to distribute oxycodone; (III) possession with intent to distribute marijuana; (IV) being a felon in possession of a firearm; and (V) possession of a firearm in furtherance of drug trafficking.[21]

Lobo moves to suppress the evidence seized during the search of the apartment because, he claims, the search warrant lacked probable cause.[22] As Lobo frames it, the warrant was premised merely on observations of "suspicious behavior on the street in

---

[17] Id.

[18] Id.

[19] Id.; Gov't Opp'n to Mot. To Suppress Ex. 3, Arrest Report 6, Oct. 25, 2016, ECF No. 17-3 ("Arrest Report").

[20] See Search Warrant 6-7; Arrest Report 1-9.

[21] Indictment 1-3, ECF No. 1.

[22] Mot. To Suppress 1.

front of this house," unattributed "rumors" of drug trafficking at Lobo's address, observations of his presence on the second-floor balcony of 60 Comstock Street one time in July, and observations that he "drove to and from this address to deliver cocaine to an informant."[23] Lobo particularly takes issue with the affidavit's failure to expressly state a connection between illicit activity and the apartment.[24]

In response, the Government contends that the controlled buy and "common sense inference[s]" from observing Lobo's behavior were sufficient to establish probable cause that Lobo was involved with drug trafficking.[25] Law enforcement officers' observation of Lobo on the second-floor balcony of 60 Comstock Street linked him to that apartment, coupled with their observation of Lobo leaving from that address to make the controlled buy and returning to that address afterward, led to the logical conclusion that evidence of a crime — drug trafficking — would be found in the apartment.[26] The Government contends, given these facts, the magistrate was

---

[23] Id. at 3.

[24] Id. at 8.

[25] Gov't Opp'n to Mot. To Suppress 1.

[26] Id. at 4.

able to draw logical inferences that established probable cause as required by the Fourth Amendment.[27]

II. Discussion

The Fourth Amendment to the United States Constitution prohibits unreasonable searches of peoples' homes and, with few exceptions, requires police to obtain a search warrant prior to commencing such a search. U.S. Const. amend. IV; Katz v. United States, 389 U.S. 347, 357 (1967) ("[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions."). The search warrant must be supported by probable cause that "(1) a crime has been committed [the commission element], and (2) that 'enumerated evidence of the [crime] will be found at the place to be searched — the so-called "nexus" element.'" Joubert, 778 F.3d at 251 (second alteration in original) (quoting United States v. Hicks, 575 F.3d 130, 136 (1st Cir. 2009)). Lobo argues that the search warrant lacked probable cause for both the commission and nexus elements.[28]

When deciding whether to issue a search warrant, "a magistrate [judge] has to make a practical, common-sense decision whether,

---

[27] Id.

[28] See Mot. To Suppress 8.

7

given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." Joubert, 778 F.3d at 251 (alteration in original) (quoting United States v. Rodrigue, 560 F.3d 29, 33 (1st Cir. 2009)). Upon a challenge to the warrant's validity, a reviewing court must "simply [] ensure that the magistrate had a substantial basis for concluding that probable cause existed." Id. at 252 (quoting Gates, 462 U.S. at 238); see also Gates, 462 U.S. at 236 ("'A grudging or negative attitude by reviewing courts toward warrants,' is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant; 'courts should not invalidate warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a commonsense, manner.'" (alterations in original) (quoting United States v. Ventresca, 380 U.S. 102, 108-109 (1965))).

Detective Smith's affidavit catalogues the following facts: (1) officers received "information of illegal distribution" of drugs from 60 Comstock Street (the so-called "rumors"); (2) surveillance of a woman entering Lobo's parked vehicle in front of 60 Comstock Street, staying for a short time, and then exiting the vehicle; (3) periodic surveillance over six months in which officers "observed several more patterns of people arriving at 60 Comstock Street, meeting with Lobo and leaving minutes later"; (4) observation of Lobo on the second-floor balcony of 60 Comstock

8

Street; (5) the CI tip in October; and (6) completion of the CI's controlled buy in October.[29] The affidavit also explains that Detective Smith had nineteen years of police experience, and fifteen of those years were spent in the Narcotics Unit.[30] By Detective Smith's assessment, Lobo's activities at 60 Comstock Street appeared "consistent with street level narcotics distribution."[31]

A. Commission

The affidavit established probable cause that a crime was committed. Lobo discredits all of the above facts due to lack of specificity and particularity — except for Lobo's participation in the controlled buy.[32] Putting aside, for purposes of this motion, what Lobo characterizes as "rumors" and the short meetings that he says lack sufficient detail, the controlled buy, by itself, satisfied the commission element. See United States v. Genao, 281 F.3d 305, 308-09 (1st Cir. 2002) (rejecting a per se rule that such a controlled buy always amounts to probable cause, but noting that it is "formidable evidence to support a search"). The First Circuit described a properly conducted controlled buy as follows:

---

[29] Warrant Aff. 1-2.

[30] Id. at 1.

[31] Id.

[32] Mot. To Suppress 7-9.

9

> police received a tip from an informant that drugs were being sold in one of the apartments in a three-family or three-story dwelling. They then arranged for the informant to make a controlled buy at that location. After searching the informant for drugs prior to the buy, and finding none, the police watched him enter and leave the building (though not the particular apartment in question). The returned informant stated that he had purchased drugs from one of the parties mentioned in his earlier tip. Finally, the police recovered from the informant illegal drugs of the same type described in the tip.

Id. at 309 (citing United States v. Khounsavanh, 113 F.3d 279, 285-87 (1st Cir. 1997); United States v. Garcia, 983 F.2d 1160, 1166-67 (1st Cir. 1993)).

In line with the method described in Genao,[33] the Pawtucket police officers searched the CI prior to the meeting with Lobo, they maintained surveillance of both Lobo and the CI during and following the meeting, and the CI produced cocaine immediately after meeting with Lobo. Warrant Aff. 1-2; see Genao, 281 F.3d at 309. Lobo does not dispute the Government's account of the controlled buy, and the Court concludes that the Pawtucket police officers properly conducted the controlled buy. Therefore, even without considering the six months of surveillance and "rumors" with which Lobo takes issue, the properly-conducted controlled buy

---

[33] The only difference between the controlled buy described in Genao and Lobo's case is that Lobo's controlled buy did not take place at his home. However, the location of the buy has no bearing on the commission element; it relates to the nexus element, which is analyzed below.

10

plainly established probable cause that a crime was committed, or in other words, that the "commission element" is satisfied.[34] See Joubert, 778 F.3d at 251.

B. Nexus

The nexus element is likewise satisfied. "Nexus 'can be inferred from the type of crime, the nature of the items sought, the extent of an opportunity for concealment[,] and normal inferences as to where a criminal would hide [evidence of a crime.]'" Joubert, 778 F.3d at 252 (alterations in original) (quoting United States v. Charest, 602 F.2d 1015, 1017 (1st Cir. 1979)). Officers watched Lobo leave 60 Comstock Street before he met with the CI and return to the same house directly following the meeting.[35] This observation, combined with the months of observation of Lobo's physical presence at 60 Comstock Street, including a sighting of him on the second-floor balcony, created

---

[34] The Court notes that the affidavit's lack of information regarding the CI's reliability or credibility is of no concern because the properly carried out controlled buy corroborated the CI's allegations. See Khounsavanh, 113 F.3d at 286–87 (finding probable cause based on a similarly-executed controlled buy and lack of information regarding CI reliability); see also Gates, 462 U.S. at 244-45 ("It is enough, for purposes of assessing probable cause, that 'corroboration through other sources of information' . . . provid[es] 'a substantial basis for crediting the [CI tip].'") (quoting Jones v. United States, 362 U.S. 257, 269, 271 (1960)).

[35] Warrant Aff. 2.

a reasonable inference that Lobo stored drugs at the second-floor unit of 60 Comstock Street.[36]

Lobo suggests that the affidavit failed to establish a particular nexus between Lobo's criminal behavior and the second-floor apartment.[37] However, Lobo overlooks that the affidavit need not spell out the nexus element explicitly; the magistrate may construe inferences from the facts provided in the affidavit to make the probable cause determination. See United States v. Charest, 602 F.2d 1015, 1017 (1st Cir. 1979) (stating that "the nexus between the objects to be seized and the premises searched do[es] not have to rest on direct observation, but can be inferred from the type of crime, the nature of the items sought, the extent of an opportunity for concealment and normal inferences as to where a criminal would hide [the items sought]." (citing United States v. Pheaster, 544 F.2d 353, 373 (9th Cir. 1976))). Thus, it is of no moment that the affidavit did not expressly state that Lobo lived at the address or detail Detective Smith's reasons for believing that evidence of drug trafficking might be found there. See Joubert, 778 F.3d at 251; Charest, 602 F.2d at 1017. The only requirement is "a fair probability that contraband or evidence of a crime will be found in a particular place," as determined by the

---

[36] See id.

[37] Mot. To Suppress 8.

magistrate. Joubert, 778 F.3d at 251. The magistrate could easily make this determination after considering that officers observed Lobo at that address on numerous occasions, including directly before and after the controlled buy, and observed him in July on the second-floor balcony. See Joubert, 778 at 251; Warrant Aff. 1. The magistrate had sufficient information to find "a fair probability" that evidence of drug trafficking would be found inside the second-floor unit of 60 Comstock Street. See Joubert, 778 at 251; Warrant Aff. 1-2.

III. Conclusion

The Court is confident that the magistrate had "a substantial basis for concluding that probable cause existed" that evidence of a crime would be found at the second-floor apartment of 60 Comstock Street. Joubert, 778 at 252 (quoting Gates, 462 U.S. at 238). Therefore, the Court will not disrupt the magistrate's finding and the Court need not reach the Government's additional argument that the good faith exception to the exclusionary rule precludes suppression. For the foregoing reasons, the Defendant's Motion To Suppress (ECF No. 15) is DENIED.

IT IS SO ORDERED.

William E. Smith
Chief Judge
Date: January 29, 2018